Mr. Mosley, good morning. You may proceed. Good morning, Judge Willman. May it please the court. I'm Mike Mosley. I represent Dean Mannis, the appellant here on interlocutory appeal of the denial of qualified immunity by the district court. There's two theories, two substantive constitutional questions here, I believe. One is if there is a Fourth Amendment violation due to alleged lack of probable cause, and secondarily, if there is evidence to maintain a substantive due process claim pursuant to Section 1983. On top of that, there are three immunity questions, even if the court finds sufficient evidence of an underlying constitutional violation, which there isn't. There is no evidence in this case. That informant was willing to arrange meetings with Mr. Thornton, who was the plaintiff below. He has been substituted since then by the bankruptcy trustee. The informant provided predictive information, which was corroborated by police officers' observations, consistent with three cases from this court, and that is Maines, Patrick, and Wazonk-Ree. Importantly, in Maines, the confidential informant said that the person would arrive at a particular time and place, would be traveling in a particular car, the tip was corroborated by police when they spotted him. In Patrick, probable cause existed because there was a corroborated tip of a CI, time and location of the meeting, place, color of the car, and the car's make, and there was a dent in the car, and the court ruled even P.C., even probable cause existed there of criminal wrongdoing in the Patrick case we cite. Importantly there, the panel of the court did not know the informant's past reliability in Patrick, yet it concluded that even probable cause existed. And then in Wazonk-Ree, the court said officers aren't required to witness actual criminal activity for probable cause to exist, and they give substantial latitude in drawing inferences from the facts and circumstances. Mr. Thornton was never arrested here. Arrest warrant issued from a district court judge, I submit that is the interposition of a judicial determination of probable cause, and that should end the inquiry, at least for qualified immunity purposes, that probable cause existed to issue that arrest warrant. But Mr. Thornton was never actually arrested. He turned himself in, he was never put into a holding facility, and he turned himself in to the county. But, in this case, based on precedent, probable cause existed. Even if it did not, it is not clear, it would not have given Dean Mann a spare warning, or an officer, a reasonable officer in his position, every reasonable officer in his position, that his conduct violated either the Fourth or the Fourteenth Amendment. But I do submit, I want to make very clear, Your Honor, Judge Wohlman, you were in the dissent, if you recall, in Moran v. Clark, where this court talked about the propriety of there even being a substantive due process claim under Section 1983. Judge Shepard, you and Judge Wohlman were both authors on the panel in Atkins, where there was no substantive due process claim. Seven justices agreed, and I didn't mean to leave you out, Judge Erickson. Okay, I wasn't there. Okay. Seven justices agreed from the U.S. Supreme Court, in the plurality in Albright, that an alleged prosecution, allegedly without probable cause, does not state a substantive due process claim. In fact, as far as I know, under Section 1983, the only time the U.S. Supreme Court has ever done so is in the county of Sacramento v. Lewis, and that is a high-speed chase the standard is intent to harm. On this factual record, really, whether the court Our circuit is a minority of circuits as to whether we are, in those three circumstances, we allow a substantive due process claim. That's really unimportant here. I mean, whether I should argue, whether I should even make a record that, you know, pursuant to the plurality in Albright, this is really a Fourth Amendment case. It really is. It doesn't really matter, though. It's really unimportant here. There's no evidence of those three circumstances from Averly, from Amaran v. Brooks. There's no evidence below, beyond speculation, of any of those three circumstances that a substantive due process claim could be mounted by the plaintiff. And even if there was, on these facts, there is not sufficient factual correspondence with prior precedent that would have put Dean Maness on notice such that he does not retain immunity. The constitutional questions were not beyond debate. How do we respond to the district court's statement and its opinion that plaintiff has presented sufficient evidence to support his claim that Maness concocted the drug buy scheme to set plaintiff up on false drug charges? That's a confounding statement. The problem is, unfortunately, Judge Wohlman, there's no evidence to support that statement. The district court does not cite any evidence. And frankly, it appears, the context is unclear. I don't see any evidence in this case to support that claim. Is your question about whether or not that allows review on interlocutory appeal of denial of qualified immunity? That's an aspect of it. I read the transcript. I don't want to criticize your client, but he did exactly, got the impression he was almost lackadaisical about what happened here and didn't seem terribly concerned about it. I guess maybe this personal attitude doesn't make count. But is there, back to the facts that were developed below, unusual facts. Who was this confidential informant? Jennifer Carpenter was her name. She was his housekeeper. Correct. I mean, you couldn't make up, well, I guess you could make up these facts, but it's different, unusual, put it that way. And did they actually go to these different places and did they observe what they saw? Correct. That's undisputed and below. She arranged meetings. The plaintiff admits, and this is in, of course, our motion exhibits in his deposition. He admits he met with Carpenter on those two occasions. Well, the second occasion was at Walmart in a downpour. She said he would show up at three o'clock in a white Escalade. She told the police that. He showed up on cue. She got in the car for one minute and got out. She was searched before. She had what was reasonably believed to be Xanax on her before, which is a controlled substance. It's illegal to possess without a prescription. She got into the car. She got out of the car. She was searched afterwards. She was no longer found to have the Xanax and she had money on her. If that doesn't provide probable cause, if that sort of scenario doesn't provide probable cause, then I think that we're law enforcement in this country. This would be a confounding decision for law enforcement in this country. But in any event, it wasn't clearly established. If those facts don't, don't provide probable cause, there's no case with sufficient similar factual correspondence to suggest to Dean Maness that what he did violated the Constitution. Well, that was sort of my intuitive view of the case when I read the briefs and the district court's opinion. But what am I missing? What did the Moody, your honor? You're missing nothing. There is no evidence to support a setup or a scheme. And when Mr. Thornton was asked that at his deposition, he freely admitted he was speculating. And I'm not, I mean, I know my client, I'm not going, I will submit to you that this may not have when you say he's lackadaisical or he may seem as such. Well, I don't necessarily, I don't go into subjective motivation, which is irrelevant. This is a fourth amendment claim. Do these facts support probable cause or at least arguable probable cause for the qualified immunity question? And they do at least under this court's prior precedence. And we can, you know, discuss the propriety of there even being, this is not a substantive due process case. This is a fourth amendment case. The probable cause existed or at least arguable probable cause existed. And furthermore, even if it were a substantive due process case, of course, as the court has made clear in, in the, uh, the Aikens case, not only do you have to show shocks to the conscience, you have to show the denial of a fundamental right. He turned himself in. He was never put into custody. He was never arrested. And even if liberty interests, a due process, liberty interests, um, is an issue, I submit that the trial, which resulted in his acquittal gave him sufficient procedural due process. And that should be the focus, not substantive due process. Um, unless there's further questions, I'd like to, uh, save for rebuttal my remaining time. You may do so. Thank you. Okay. Ms. Hudson, good morning. You may proceed. Good morning, your honors. This is my first trip to this court. Oh, welcome. Welcome. Thank you. I tried not to make a fool of myself. May it please the court. My name is Catherine Hudson. I practice in Little Rock, Arkansas, and I represent Seneca Thornton, who is the true defendant in this case. As Mr. Mosley stated previously, Mr. Thornton has filed bankruptcy, and there's a trustee that stands in his place, stands in front of him. Uh, I am still stunned that the position is still that this police officer who was actually a captain had probable cause to do what he did to his subordinate, who was then a patrol officer. Uh, Mr. Thornton was prosecuted and accused of being a, not only a drug user, but a purchaser from known drug people. I want to first address the confidential informant. And you, uh, Judge Wollman, you stated you can't make this up, and I agree. This supposedly seasoned police officer who at the time was a captain and a member of the Tri-County Drug Task Force, who stated he had substantial training in narcotics, um, cases, how to, uh, procure buys, how to set up a, a, uh, staged buy. He stated this in his deposition. And in his deposition, we tried to get to, was this part of your training that you could use your housekeeper as a confidential informant? He didn't see a problem with that. And also that the drugs that were used were not taken from a drug locker where they had been properly identified, or even from a pharmacist who could identify these were proper drugs. No, these drugs came from his housekeeper's girlfriend, who was also coincidentally, uh, supposedly the source of these allegations against, uh, Officer Thornton. She is absent from this case. Um, the buy that was set up was supposedly audiotaped the first one and videotaped the or videotapes. The audiotape was an audible and the videotape was unviewable. There was no evidence there. They also tried to submit, uh, text messages and those were excluded because there was no way to verify that these had actually come from Officer Thornton's telephone. There were no phone records submitted to corroborate the text messages, nothing. And that evidence was rightly excluded. Uh, Officer Thornton, as you know, was prosecuted, went to trial and was acquitted in less than 40 minutes. In fact, uh, I don't believe it's in any of the briefs, but as a side, the felony, uh, charges against him were dismissed by the court after the state rested. So what the jury was left with was one misdemeanor, uh, offense. As to probable cause, our position is there was none. I think it's well settled law. You cannot manufacture the evidence and then claim probable cause. And that's what happened here. The confidential informant, uh, does not, does not meet what the courts have looked to in the past. And her information was not independently verified only by Officer Mannes' statement, as you say, that she was used before successfully. The court puts a high importance on the veracity, the reliability, and the past performance of a confidential informant. None of that existed here. Uh, counsel brings up Moran. And I think Moran is very important to this case. In that case, you also had a police officer. In this case, he was a sergeant, a supervising sergeant that was, um, prosecuted. He wasn't even, this was a police misconduct case of, uh, abuse, physical abuse. He was prosecuted as a supervising sergeant. He wasn't even present when the actual event occurred. It's my understanding. Um, he was, he appealed, he was denied, uh, or the, the officer, the department was granted qualified immunity, which was reversed because in that case, it's similar to this case, his substantive due process were, rights were violated because the, the, the evidence was, it was somewhat manufactured in his case as well. Um, the issue of substantive due process in Arkansas is a little bit different. And there's several cases, uh, I think beginning with Sullivan, where it conflict, the Arkansas constitution, it conflicts slightly with, um, the U S constitution in regard to the substantive due process issue. Uh, beginning in Sullivan, the remanded back, the Arkansas Supreme court did interpret that the Arkansas constitution affords greater protections than perhaps the U S under the fourth. They, they continue that under Griffith v, uh, Arkansas that, uh, regarding a consent to search that Arkansas law enforcement must inform someone that they have the right to refuse a consent, which differs from federal law. Um, and then again, further and Richards, uh, be Supreme court. Um, anyway, um, move on past that. I want to address what Mr. Mosley said, um, that Seneca, Seneca Thornton did not have a fundamental right violated because he turned himself in. Well, Seneca Thornton was a police officer in the small community. He was hailed into the prosecutor's office. Robert Dietrich told that, um, they had him on tape. They had him on audio. And if you'll just resign, the department will not prosecute you. Mr. Thornton, absolutely 100,000% convinced of his innocence said, no, I will not resign. Go ahead and prosecute me. He was terminated the very next day. Um, and of course took them right to trial and rather swiftly, I might add, is that the standard that your rights aren't violated? If you turn yourself in, I would hope not. Well, I think the argument was perhaps a little different than just that. I mean, it strikes me that what they're really saying is this, there may be some sloppy police work here. There may be some things that we wouldn't teach in a class, but essentially I think what the, what the state is arguing is that you start with the idea that you have a confidential informant and her roommate who apparently have some need to help themselves, who approaches a peace officer and says, I have reason to believe that, uh, officer Thornton, uh, is a person that, uh, will buy marijuana and, uh, Xanax, right? Okay. And then they say, really? And this officer sets up this chain of events where apparently they get these drugs illegally. Uh, and apparently they make a deal to, to have a controlled delivery of these drugs. And they ineptly, uh, go about the business of trying to record these transactions. They have two transactions, uh, of some sort, but they're um, and, uh, as is oftentimes the case, the CI is not always the most reliable human being that's walked the face of the earth. And at the end of the day, when presented to the court, uh, at trial, because somebody found there was probable cause and somebody thought the case could go forward to trial, um, that, uh, um, that they just said, there's just not enough here because nobody ever bothered to get the money. Nobody ever bothered to search her before and after. I mean, all the things that we ordinarily see. And so the question really, I think that they're, that they're trying to raise is that, well, what was presented to the magistrate, the magistrate passed on it and they issued a warrant and that therefore there was probable cause that satisfies the fourth amendment. Right. But even if it doesn't, there's no substantive deal here because nobody suffered any injury to their Liberty interest, blah, blah, blah, blah. But at the end of the day, the question really is, is that it appears from looking at judge opinion. And if you look at the facts that he found in the one and a half pages, they really don't really set forth many facts that would cause us to really have a better understanding of exactly what he believes happened. He just says, there's enough evidence to think this may have been a corrupt bargain, that this was an entrapment. Right. And I think what the, what the, that is, is that, you know, there's surmise that it might be a trapment. There's speculation that it might be an entrapment, but there's little, if any evidence that that exists. Why are they wrong on that argument? Well, one thing that's blazingly wrong is that a state takes the position that, uh, since, uh, Mr. Thornton, um, didn't dispute the firing and he, all he did was acknowledge that he just signed the acknowledge that he received the termination. That was an admission of guilt. And certainly as a police officer, he would know that if he's under criminal charges that he should keep his mouth shut. I would hope. Um, also, uh, this was more than a frame up. I think, I think there was underlying motivation here. What Mr. Thornton was speculating to was the actual motives, not that he was framed deliberately set up, um, for the purposes of getting rid of him out of the department. At the time, he was the only black patrol officer and he was, uh, ironically promoted later down the right to sergeant, but then ironically, even still furthered, he has now been demoted. He and the only other black sergeant, um, obviously not in our briefs, but it certainly will come up at trial. Um, this man suffered more. He wasn't, he didn't spend time in a jail cell, but he suffered an irreparable stain to his reputation. His wife was a business owner. She had her own beauty salon that suffered because of this. He had two children that were ridiculed at school and ultimately had to be homeschooled because of it. This man's fundamental rights were absolutely violated. And that's what gets us to substantive due process. Okay. He was his fundamental right to be safe in his job. First of all, without having an employer, um, go off the rails on him and tarnish his reputation, subject him to criminal prosecution. I mean, this case goes beyond the pale on many levels. Um, Judge Moody stated what he stated. Um, he may not have articulated it in his order, but he stated what he stated because of what he saw on the record. Everybody's, uh, depositions and, uh, the evidence that was presented. And again, you know, the fact that he was acquitted at a criminal trial is not dispositive, but it's certainly something to be considered. Um, a jury of 12 people heard this as well and found it to be egregious. And well, actually they probably, you know, it's not fair for us to say they found it egregious. What they found was that there was, um, at least reasonable doubt. I mean, they might've found that it actually happened, but it's, there's reasonable doubt. What, um, am I correct that the Arkansas State Police participated in the investigation? They participated only to the extent that Scott Russell was in charge. Uh, he was the police officer and the state police component of the, uh, Tri-County Drug Task Force. He, his only job in this was to, uh, set up the audio wire the second time. And of course, neither one of those were true. Neither, neither one of them worked? Neither one of them worked. Uh, the audio was inaudible, the video was unviewable, and you couldn't hear anything. I want to address one- Do you have a record that tells us whether that was the, the state police that aired there? They were granted. Cool. And then secondly, uh, do I recall that also there was information, uh, from the prosecuting attorney, um, that, that came into play here about other investigation? I'm sorry? And was there information received from, uh, the prosecuting attorney for Arkansas County that there was, that, that, uh, that the appellant here was under investigation? That allegation might have been made, but there was no basis for that. Now I'm down to one minute. What? And now I have no minutes. The drug involved in this case. I'm sorry? What was the drug that was involved in this case? The drug was Xanax, Your Honor. And an interesting point, uh, state made in their brief was that what's dispositive is that she came back without the Xanax. And, but the, the, Mr. Thornton was never pulled over, never searched to see if he had any drugs on him. And the reasoning behind that, the state says is, well, he, there was only two pills. He could have just popped them in his mouth. Well, the same thing goes for this confidential informant who coincidentally had three pending judge drug charges of her own. And as this man's employee and under criminal, uh, indictment herself, you can flip that and say, she did this for Mr. Maness to comply with his request and be in his good stead. Not that she was fearful that she could be prosecuted. And she very easily could have downed those two Xanax pills herself when she went back to the car, which would mean why she had none on her. Um, this is, I mean, anybody who's watched TV knows this case was really botched. Well, we thank you for your argument. Thank you, Your Honor. Mr. Mosen. I mean, you've been presented with information that is not in the record. You had arguments made to you that are not made below or here, including state constitutional arguments that revolve around article two, section 15 of the Arkansas constitution, not the due process analog under the Arkansas constitution that shouldn't have, shouldn't even be considered. You've been told there's a fundamental right in employment when the law is clear, there is not, especially in at will employment state. And what you've heard are allegations. The record is the record. Today's the day that any information that, uh, I mean, Jennifer Carpenter could have said this, would have said this to pose her, let's get her, let's get her information in the record that wasn't done here. And it's certainly not in the, in the briefs and they, you know, we agreed to a joint appendix here and the record is, is available. Um, did she do this for Maness? Did she do, I mean, there's more evidence here. Uh, let me, let me put it, let me put it in different ways. First of all, I'm not the state, I'm not representing, representing the state. This is a civil case against Dean Maness. Uh, if this is an attempt to re argue or re litigate the defense of the criminal prosecution, then that clearly is not what we're here for. The question is probable cause judge Erickson, as you recognized, there is a judge who determined probable cause exists and there's been no effort through proof in this case to meet the high threshold as the U.S. Supreme Court has caused, uh, as, as, uh, deemed it counseling session. Yes, your honor. In your statement of the case, you make a statement about the involvement of the prosecuting attorney for Arkansas County. Is that my brief your honor? Okay. Now I see that's the athletes. Do you know anything about that? I know that, here's what I can tell you. There's no evidence in the rec. Thornton was in, was informed by the prosecuting attorney of Arkansas County that he was on the subject of a drug investigation. That's correct. My understanding is that's at least there was evidence by Thornton. He testified. We have to view it in a light most favorable to him that that's what he was informed. Correct. And Dean Maness doesn't work for Arkansas County. Uh, that's the point of my question. This, this comes from his, his testimony. It, there's nothing else in the record about that. There's no official involvement of the prosecuting attorney in this investigation, I guess is what I'm getting at. Other than, you know, I, I think that the warrant, which is in the record was, um, run through the prosecutor's office. You know, it comes out of the County, uh, County district attorney's office is the way the, this was presented, but, um, you know, the video, no, the video, the video is not great. I'm not going to concede that it doesn't show anything, but it's not in the evidence. It's not in the record in this case because it's unnecessary to present it. They didn't present it. These text messages, they aren't in the record either. Why are we talking about them? What, what is undisputed? I'm clear. Is it, are the video, is the video and the audio, are those things in the record? No. Furthermore, it's undisputed that Mr. Thornton and Ms. Carpenter communicated. I don't care if they did it through text message or carrier pigeon. He showed up when she said he was going to show up in the vehicle at Walmart at the, and she got in the car for one minute and got out. Scott Russell of the Arkansas state police viewed this. She was searched before she was searched after she had, uh, drugs on him, which by the way, the issue of the, you know, the, the, the drugs came from Deanna Ray. They, two witnesses, the state police officer and my client recognized them to be Xanax. But rather than go off of that, a, uh, another pill from the same sample was sent to the state crime lab. And it was in fact Alproza land, which is a barbiturate, which is Xanax. Um, so they, they clearly communicated. He testified that there were phone calls between her and him. Um, what evidence exists that in this record that Dean Maness manufactured anything, none. And that's the issue here. We're on, uh, a denial of qualified immunity and interlocutory appeal. We have an undisputed factual record for two reasons. It is truly undisputed the material facts. And even if there's any dispute, you take that in the light, to Mr. Thornton. And you still answer the legal question respectfully of whether or not the law was clearly established, but it's undisputed for two reasons that by operation of law, there was no response to the statement of undisputed material facts below. And that's, if I, you know, I, I don't, I'm not sure how I feel about making the argument, but frankly, rule 56.1 of the local district court rules in Arkansas should mean something. The federal court scheduling order should mean something. And there was no response to the, to the statement of those facts are undisputed. And respectfully, the most important thing is, is that statement from judge Moody has no, there is no record support. There is no factual support in any deposition for that. It is based on their allegations and perhaps the fact that he was acquitted criminally. And that's just simply irrelevant. Let's just further questions. I'm out of time. Very well. The case is submitted. We thank both sides for the arguments and the briefs, and we will take the case under consideration. Your Honor, may we be excused? Yes, you may. Madam clerk, is that